## LOUISVILLE AND NASHVILLE RAILROAD COMPANY *et al. v.* POSTAL TELEGRAPH-CABLE COMPANY.

1. The act of Congress of July 24, 1866 (Rev. Stat. § 5263 et seq.), giving telegraph companies the right to construct and operate their lines through, along, and over the public domain, military and post-roads, and navigable waters of the United States, does not withdraw from the States the right to legislate on the subject of the condemnation of railroad rights of way for telegraph companies.

2. The measure of damages in the condemnation of a right of way of a railroad company for the construction of a telegraph line is the value of the land taken and the extent to which the use of the right of way by the railroad company is diminished by its use by the telegraph company. Any rent previously paid by a telegraph company for the use of the right of way in conducting a business, entirely disconnected with and not ancillary to the railroad company in the discharge of its corporate functions and duties, is not a proper element to be considered in the estimate of damages.

3. The verdict is supported by the evidence, and no error of law is made to appear.

APRIL 15, 1915.

Equitable petition. Before Judge William F. Eve (of the city court). Richmond superior court. May 26, 1914.

*Joseph B. & Bryan Cumming* and *J. M. Hull Jr.,* for plaintiffs. *C. E. Dunbar,* for defendant.

EVANS, P. J. The Postal Telegraph-Cable Company commenced proceedings against the Georgia Railroad and Banking Company

and its lessees, the Louisville and Nashville Railroad Company and the Atlantic Coast Line Railroad Company, to condemn a right of way for a telegraph line on the right of way of the Macon and Augusta Railroad, a branch line of the Georgia Railroad and Banking Company. The board of assessors awarded the sum of one hundred dollars as damages for the easement, and an appeal was taken by the condemnees to the superior court. Pending the appeal the railroad companies filed against the telegraph company their petition in equity to enjoin the further progress of the condemnation proceeding. The equity case and the appeal from the assessors' award were consolidated and tried together as one case. A verdict was returned in which the damages were assessed at $60. The railroad companies moved for a new trial, which was refused.

1. The court refused a written request to charge the jury as follows: "The Congress of the United States, in pursuance of power given it by the constitution of the United States, has declared the railroads of the country, including that branch of the Georgia Railroad which is known as the Macon and Augusta Railroad, whose right of way the Postal Telegraph-Cable Company is seeking to condemn for a telegraph line, to be post-roads and as such subject to the jurisdiction of Congress. The Congress of the United States, also in pursuance of power given it by the constitution of the United States, has also prescribed the terms and conditions on which telegraph companies may construct their lines on the right of way of railroads. I charge you that the legal effect of this legislation by Congress is to withdraw the right of way of railroads from the operation of the authority of the States in the matter of the construction of telegraph lines thereon; and that the acts of the legislature of Georgia, under which the Postal Telegraph-Cable Company is seeking to condemn a part of the right of way of the Macon and Augusta Railroad, are, as to such proceeding, unconstitutional, null and void; and you should find a verdict for the petitioners, Louisville and Nashville Railroad Company, Atlantic Coast Line Railroad Company, and the Georgia Railroad and Banking Company." The requested instruction was properly refused. The act of Congress approved July 24, 1866 (Rev. Stat. § 5263 et seq.), giving telegraph companies the right to construct and operate their lines through, along, and over the public domain, military or post-roads, and navigable waters of the United States,

was first up for consideration and construction by the Supreme Court of the United States in Pensacola Tel. Co. *v.* Western Union Tel. Co., 96 U. S. 1 (24 L. ed. 708). It was there held that the act did not confer upon telegraph companies the right to enter upon private property without the consent of the owner, or grant them the right of eminent domain. The opinion was by Chief Justice Waite, who, after adverting to the absence, in the act, of any attempt by Congress to provide for the appropriation of private property to the uses of the telegraph, said: "The use of public property alone is granted. If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with the owner. No compulsory proceedings are authorized. State sovereignty under the constitution is not interfered with. Only national privileges are granted." This construction of the statute has been steadfastly adhered to. Western Union Tel. Co. *v.* Ann Arbor R. Co., 178 U. S. 239 (20 Sup. Ct. 867, 44 L. ed. 1052); Western Union Tel. Co. *v.* Penn. R. Co., 195 U. S. 540 (25 Sup. Ct. 133, 49 L. ed. 312, 1 Ann. Cas. 517); Western Union Tel. Co. *v.* City of Richmond, 224 U. S. 160 (32 Sup. Ct. 449, 56 L. ed. 710); Williams *v.* City of Talladega, 226 U. S. 404 (33 Sup. Ct. 116, 57 L. ed. 275). In the City of Richmond case, supra, it was said that the act of Congress made the erection of telegraph lines free to all submitting to its conditions, as against an attempt by a State to exclude them because they were foreign corporations, or because of its wish to erect a monopoly of its own; but except in this negative sense the statute is only permissive, and not a source of positive rights. The condemnation statute of this State is in aid of a telegraph company acquiring an easement upon a railroad right of way, not inconsistent with the railroad company's use of its own right of way in the discharge of its proper functions and duties, where the telegraph company is unable to obtain such easement by contract. The State's right of eminent domain extends to property already dedicated to a public use, with the restriction that it can not be subjected to an additional public use, if the second use either destroys or seriously impairs the first use. *A. & W. P. R. Co.* v. *A., B. & A. R. Co.,* 124 *Ga.* 125 (52 S. E. 320). It follows, as Congress has not attempted by the act of 1866 to interfere with the State's sovereignty or the exercise of the State's right of eminent domain, that the requested instruction was properly denied.

2.  The court refused to instruct the jury that in ascertaining the value of the easement sought to be acquired by the telegraph company they should take into consideration any rent which the railroad companies receive for the premises and which they may lose by the condemnation.  It appears from the pleadings that the Georgia Railroad and Banking Company for a stated consideration granted to the telegraph company a license to erect on its right of way poles for the purpose of carrying telegraph wires, and that the license was to continue for a period of twenty years.  It was alleged in the answer of the telegraph company that this contract had expired, and this allegation was not controverted in the evidence.  The measure of damages for the easement sought by the telegraph company is the value of the land actually taken and the extent to which the use of the right of way by the railroad company is diminished by its use by the telegraph company.  *Atlantic Coast Line Railroad Company* v. *Postal Telegraph-Cable Company,* 120 *Ga.* 268 (48 S. E. 15, 1 Ann. Cas. 734).  In that case it was pointed out that the appropriation of land to railroad use amounted to a withdrawal of the right of way from any use except what is necessary or auxiliary to the operation of the railroad, and that the railroad right of way can have no general sale or rental value.  The contract contained no covenant by the telegraph company to render any service to the railroad company, and the superintendent of the Georgia Railroad and Banking Company testified that the railroad companies "did not use the Postal Telegraph line."  Under the facts the line of the telegraph company was not used by the railroad company as an auxiliary in the operation of its trains or in the discharge of any corporate function.  What rent the telegraph company may have contracted to pay for a license to occupy the right of way of the railroad company, for purposes altogether disassociated from the discharge of the railroad company's corporate functions and duties, is not an element to be considered in the computation of damages.

3.  The evidence authorized the verdict, and no error of law is made to appear.

*Judgment affirmed on main bill of exceptions.  Cross-bill dismissed.  All the Justices concur, except Fish, C. J., absent.*