## NORTHERN PAC. RY. CO. v. NORTH AMERICAN TELEGRAPH CO.

(Circuit Court of Appeals, Eighth Circuit. December 15, 1915.)

No. 4347.

1. EMINENT DOMAIN ☞47(1)—PROPERTY IN RIGHT OF WAY—SURPLUS USE—CONDEMNATION.

A stranger corporation, which has no right, property, or interest in a valuable right to the surplus use of its right of way for telegraph and railroad purposes, which a railway company has acquired and owns, may not take that valuable right to such surplus use from it by condemnation without making compensation therefor.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107, 109, 110, 116–120; Dec. Dig. ☞47(1).]

2. RAILROADS ☞75(4)—PROPERTY IN RIGHT OF WAY—SURPLUS USE.

A railway company, which has become the owner of a railroad, which it is operating, and of a right of way appurtenant thereto, has the exclusive right to the use of that right of way for telegraph purposes, as well as for railroad purposes, and if, after the application of so much of the use thereof as the maintenance of its own railroad and telegraph requires, there remains a surplus use of that right of way, either for telegraph or for railroad purposes, it may lease or permit that use, or any part of it, for a valuable consideration, for any purpose which does not interfere with its operation of its own railroad and telegraph, and its discharge of its duties to the public to so operate them. This right of a railroad company to lease or permit the surplus use of its right of way or of its property is its private property, and may be valuable property.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 182; Dec. Dig. ☞75(4).]

3. EMINENT DOMAIN ☞128(1)—CONDEMNATION OF RIGHT OF WAY FOR TELEGRAPH OVER RAILROAD RIGHT OF WAY—ELEMENTS OF COMPENSATION—EVIDENCE.

In proceedings by a telegraph company to condemn right of way for its line over the unused portion of the right of way of a railroad company, the compensation to which the railroad company is entitled is not limited to the damages it will sustain in the operation of its railroad, but includes also the value to it of the use taken, for telegraph as well as for railroad purposes; and where the right to such use has been and may be leased for a substantial rental, evidence to show its rental value is admissible as a basis for determining what is just compensation for its taking.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 349; Dec. Dig. ☞128(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. COURTS ☞89—OPINIONS—AUTHORITY.
    An opinion in a particular case founded on its special circumstances is
not applicable to cases under circumstances essentially different.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec.
Dig. ☞89.]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Condemnation proceeding by the North American Telegraph Company against the Northern Pacific Railway Company. From the judgment, defendant brings error. Reversed.

The Northern Pacific Railway Company complains of the rejection of all evidence of the value of the right which the telegraph company is seeking to take from it by condemnation to use one side of the railway company's right of way for a line of telegraph, and of the exclusion of the value of the right to such use as an element of damages from the consideration of the jury, which assessed the just compensation for the taking or damage to such right. The railway company had a right of way for railroad and telegraph purposes from White Bear, which is about 10 miles from St. Paul, to Duluth, and from White Bear to Stillwater. About 150 miles of this right of way is on the main line of the railway company from St. Paul to Duluth and is of great value. On one side of the railroad upon this right of way the railway company had constructed and was using its telegraph line in the operation of its railroad and the conduct of its business. It did not need to use the other side of its right of way for its own telegraph purposes, and about the year 1900 it leased to the telegraph company for 10 years for specified rentals the right to this surplus use of its right of way for the telegraph line of the telegraph company, and that company exercised that right under this lease and paid the rentals there fixed voluntarily during the 10 years. At the end of that term it instituted this proceeding permanently to condemn and take from the railway company this right which it had theretofore leased. There was a jury trial of the question of the amount which the telegraph company should be required to pay as just compensation for the taking, at which the court excluded from the jury any consideration, as an element of the railway company's damages, of the value of this right to the use of its right of way for this telegraph line, and restricted the recovery of damages to those arising from the interference with the mere operation of the railroad and with the physical condition of the land subject to its right of way.

Emerson Hadley, of St. Paul, Minn. (C. W. Bunn, of St. Paul, Minn., on the brief), for plaintiff in error.

Edward T. Young, of St. Paul, Minn. (O'Brien, Young & Stone, of St. Paul, Minn., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). [1] It is indispensable to a fair discussion and just decision of this case that the real question at issue be clearly perceived and kept constantly in mind. That question is: May a stranger corporation which has no right, property or interest in a valuable right to the surplus use of its right of way for telegraph and railroad purposes which a railway company has acquired and owns, take that valuable right to such surplus use from it by condemnation without making compensation therefor? That this is the actual question at issue will appear from a reference

to a few indisputable rules of law and from a brief review of the course of the trial below.

The proceedings in this case must be governed by the declaration of section 13 of article 1 of the Constitution of Minnesota that "private property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or secured," and the provisions of section 6246, General Statutes of Minnesota 1913, that "any public service corporation shall have the right to obtain by condemnation, under the right of eminent domain, any land, or any right over, through, or across the same, or any easement therein, necessary for the convenient prosecution of its enterprise; and any telegraph or telephone company may in the same manner acquire the right to construct its lines over, along, and upon the right of way and lands of any railway company upon making just compensation therefor to such company; but such right shall at all times be subject to the right of the railway company to use its right of way and lands for railway purposes, and said telegraph or telephone lines shall be so located, constructed, and maintained as not to interfere with the usual operation of such railway."

It will be noticed that, while this section limits the extent of the right of the surplus use of the railway company's right of way which the telegraph company may take by condemnation, so that it may not interfere with the operation of the railroad, the section does not undertake to appraise or limit the value of this right which may be so taken. Much less does it indicate that such right is without value, or that its taking will cause no damage to the railway company, but, on the other hand, it clearly shows that the Legislature must have been of the opinion that this right was of value and that its taking or destruction might cause damage, for the section permits its taking only "upon making just compensation therefor" to the railway company.

[2] A railway company, which has become the owner of a railroad which it is operating and of a right of way appurtenant thereto, has the exclusive right to the use of that right of way for telegraph purposes as well as for railroad purposes. If after the application of so much of the use thereof as the maintenance of its own railroad and telegraph requires there remains a surplus use of that right of way either for telegraph purposes or for railroad purposes, it may lease or permit that use, or any part of it, for a valuable consideration for any purpose which does not interfere with its operation of its own railroad and telegraph and its discharge of its duties to the public so to operate them. This right of a railroad company to lease or permit the surplus use of its right of way, or of its property, is its private property and it is often very valuable property. Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 51 Fed. 309, 315, 317, 321, 2 C. C. A. 174; Union Pac. Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 585, 16 Sup. Ct. 1173, 41 L. Ed. 265; American Telephone & Telegraph Co. v. St. Louis, I. M. & Southern Ry. Co., 202 Mo. 656, 101 S. W. 576, 585, 586; Hartford Fire Ins. Co. v. Chicago, etc., Ry. Co., 175 U. S. 91, 93, 20 Sup. Ct. 33, 44 L. Ed. 84; James Quirk Milling Co. v. Minneapolis & St. Louis R. R. Co., 98 Minn. 22, 26,

107 N. W. 742, 116 Am. St. Rep. 336; Western Union Telegraph Co. v. Penn. R. R. Co., 195 U. S. 540, 570, 25 Sup. Ct. 133, 141 (49 L. Ed. 312, 1 Ann. Cas. 517). In the case last cited the Supreme Court said that the constitutional protection of private property from taking for public use without just compensation applied as well to private property of a railroad company devoted to a public use, that:

"There is no difference whatever in principle arising from the difference in the uses. A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. We discussed its character in New Mexico v. U. S. Trust Co., 172 U. S. 171, 183 [19 Sup. Ct. 128, 133 (43 L. Ed. 407)]. We there said that if a railroad's right of way was an easement it was 'one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it corporeal, not incorporeal, property.' * * * A railroad's right of way has, therefore, the substantiality of the fee, and it is private property even to the public in all else but an interest and benefit in its uses. It cannot be invaded without guilt of trespass. It cannot be appropriated in whole or part except upon the payment of compensation. In other words, it is entitled to the protection of the Constitution, and in the precise manner in which protection is given."

In Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co., 51 Fed. 309, 315, 2 C. C. A. 174, the Union Pacific Company made a contract of lease for 999 years of the surplus use of some of its railroad tracks extending over many miles and some of its railroad facilities at Omaha at a rental of $45,000 per annum, and this court and the Supreme Court sustained that contract. In Mason City & Ft. Dodge R. Co. v. Union Pacific R. R. Co. (C. C.) 124 Fed. 409, 412, 414, 415, the court compelled the Union Pacific Company to permit the Mason City & Ft. Dodge Railway Company to avail itself of the surplus use of some of the Union Pacific's railroad tracks and other railroad facilities at Omaha and between that city and South Omaha, but required the Ft. Dodge Company to pay a reasonable compensation for the right to that use, and its decree was affirmed in this court (Union Pacific R. Co. v. Mason City & Ft. Dodge R. Co., 128 Fed. 230, 64 C. C. A. 348), and in the Supreme Court (Union Pacific R. Co. v. Mason City & Ft. Dodge R. Co., 199 U. S. 160, 26 Sup. Ct. 19, 50 L. Ed. 134).

There can be no doubt, therefore, that the right of a railroad company to let or permit the surplus use of its right of way to another for telegraph purposes or for railroad purposes is its private property and that it may be valuable property.

[3] At the trial below Mr. Clapp testified that he was and had been superintendent of telegraph for the Northern Pacific Railway Company for 2½ years and that for 17 years he had been working for different telegraph and telephone companies, that he had been engaged in acquiring and leasing or permitting rights of way for telegraph and telephone lines by railway companies upon their rights of way and knew what the practice was in the matter of leasing such rights, that such leases went through his hands, that they were continually coming up for his consideration, that there were about 60 such leases covering the placing of poles and wires longitudinally on parts of the right of way of the Northern Pacific Company, that it was not practicable to put another telegraph or telephone line on the same side of the right

of way of the railway company on which the telegraph company sought to maintain its line in this case, that there was a demand for telegraph and telephone lines between White Bear and Duluth, that there was no going price or market value for permanent rights to the surplus use of the right of way of the railway company for a telegraph or telephone line, but that there were permits in existence for at least 68 telegraph or telephone lines on parts of the right of way of the Northern Pacific Company, and that he thought he could tell the value of the leasehold right to put a telegraphic pole line similar to that sought by the telegraph company on the right of way of the railway company; but the court refused to permit him to answer the question, "State the market value of such right of way?" and sustained objections to offers made by counsel for the railway company to prove the market value of a right of way similar to that sought to be taken in this case and to an offer to prove what other parties were paying for such rights of way in the market generally. There was uncontradicted evidence that many temporary leases of such rights of way had been made, that many such were in existence, that the Northern Pacific company uniformly leased its right to the surplus use of its right of way for a telegraphic pole line along portions of its right of way for $4 per mile per annum for the pole line and $1 per mile per annum for each wire, and that 68 leases had been voluntarily taken by companies at that rate, and that the right to the surplus use of the railroad company's right of way for the telegraph line of the telegraph company here sought was as valuable as any the company owned.

Mr. Cooper testified that he had been the land commissioner of the railway company since 1904, that he had had large experience in the sale and in the leasing of rights of way for telegraph and telephone purposes, that he believed that the price charged by the railway company for leases for pole lines for telegraph purposes was the reasonable and just value of the use leased, that the capitalization at 4½ per cent. interest of that price, to wit, $4 per annum per mile for the pole line and $1 per mile per annum for each wire, amounted to $24,677, and that he was of the opinion that that was the fair value of the right to the surplus use of the right of way of the railway company for the line of telegraph the telegraph company sought.

Mr. Lusk testified that he was the attorney for the Chicago Great Western Railroad Company for 10 years, that he was one of the receivers of the St. Louis & San Francisco Railroad Company, that he was one of the commissioners who, prior to the trial of the question of damages before the jury, found the damages to the Northern Pacific Railway Company from the taking by the telegraph company of the railway company's right to the surplus use of the right of way for the telegraph line of the telegraph company to be $17,449, and that the reason why he thought that was the value of the right sought to be taken and the amount of the damage to the railway company was "because they could lease, in my judgment, to other parties for that amount without any question, I think so, for telephone or telegraph." The telegraph company offered no evidence upon the value of this right, and consequently there was no evidence in conflict with the

testimony which has been recited as to the value of the right' about to be taken by the telegraph company, nor as to the loss which would be entailed upon it by depriving it of that right.

There can be no doubt that here was competent evidence ample to sustain a finding by a jury or a court that the value of the right of the railway company to the surplus use of its right of way for telegraph purposes which the telegraph company was seeking to take from it in this proceeding and the damages to the railway company from the taking of this right was more than $10,000. For the testimony was conclusive that there was no market value for a sale or a lease of a permanent right to the use of the railway company's right of way for a telegraph line such as was here sought by the telegraph company, that there was a market rental value of temporary leases of such rights and that the telegraph company had taken one and had paid the rental for it for 10 years. Now, where real property about to be taken by condemnation has no market value, the amount of rent, or of income it has produced, and is producing, and is capable of producing, and the opinions of men who have had experience in dealing in it and have knowledge of its value, are competent and material evidence to determine what is just compensation for its taking; in other words, what damages will be inflicted by that taking? Monongahela Navigation Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463; Montgomery Co. v. Bridge Co., 110 Pa. 54–58, 20 Atl. 407; Sanitary District of Chicago v. Pittsburgh, etc., Ry. Co., 216 Ill. 575, 584, 75 N. E. 248, 251, 252. In the case last cited the trial court admitted evidence of the income that had been derived from the property taken. The Supreme Court of Illinois sustained that admission and said:

"The Constitution and the law require that the owner of property shall receive such compensation that he will be as well off after the taking as he was before. To do that it is necessary to determine what the property is worth to the owner, and unless he receives what it is worth to him he does not receive just compensation. It is matter of common knowledge that such property as this and devoted to such a use is not bought and sold in the market or subject to sale in that way, and that such property has no market value. * * * One of the important considerations in ascertaining the value of property which has no market value is its productiveness and capabilities for yielding profits to the owner."

To the same effect are St. Louis, K. & A. Ry. Co. v. Chapman, 38 Kan. 307, 16 Pac. 695, 5 Am. St. Rep. 744; Lewis on Eminent Domain, § 706.

While the evidence which has been recited crept into this case, the court refused to permit the railway company to prove what the telegraph company had paid to it for the use of its right of way for its telegraph line under its lease for 10 years, or what others were paying for like privileges, and at the close of the trial it charged the jury that in finding the damages to the railway company from the taking of this right they must not consider what the railway company had been receiving for the right to this surplus use of its right of way for telegraph purposes, or what it was receiving for this or other like rights from other companies, or any other fact or testimony tending to show

the value of this right which the telegraph company was taking, or the damage to the railway company for its taking, and that they must limit the damages they were to find to those resulting to the railway company from the construction and maintenance of the telegraph line in the mere operation of its railroad and the maintenance of the proper condition of the land subject to its right of way, such as the increased expense of mowing the grass and of burning old ties caused by the construction and maintenance of the telegraph line.

From this review of the evidence and the proceedings at the trial it clearly appears that there was competent evidence and rejected offers of competent evidence that the value of the right to the surplus use of the railway company's right of way for telegraph purposes which the telegraph company sought to take for its telegraph line was of the value of more than $10,000, that the maintenance of its telegraph line would prevent any other telegraph line on that side of the railway company's right of way and would thereby inflict a loss of more than $10,000 upon the railway company, that the court instructed the jury that they must not consider or allow for the railway company anything whatever on account of the value of this right which the telegraph company was taking, nor on account of the loss the railway company would sustain by the appropriation to itself by the telegraph company of this right, and that the real question in this case is: May a stranger corporation, which has no right to, or property or interest in, a valuable right to the surplus use of its right of way for telegraph and railroad purposes, which the railway company has acquired and owns, take that valuable right to such surplus use by condemnation without making any compensation whatever therefor?,

It is not easy to conceive of a course of reasoning which will lead to an affirmative answer to this question, while that which results in a negative answer seems conclusive. Take the case in hand. The railway company is the owner of its right of way for telegraph purposes and for railroad purposes. It has the right to the use of all of this right of way for those purposes, and if there be a surplus use above that necessary or convenient for the operation of its own railroad and telegraph it has the right to permit or lease that surplus use for a pecuniary consideration. This railway company's right to that surplus use of its right of way for telegraph purposes which the telegraph company is seeking to take from it by condemnation appears from the evidence introduced and offered to have a value of more than $10,000, and its taking will inflict upon the railway company a loss of more than $10,000. The telegraph company is a stranger to the railway company and has no right, title, or interest in its right of way or in the surplus use of it. That right of way and all its use for telegraph and railroad purposes, both the surplus use thereof and the use thereof necessary for its own railroad and telegraph, are the exclusive private property of the railway company, which "cannot be invaded without guilt of trespass" and "cannot be appropriated in whole or in part except upon payment of compensation." 195 U. S. 570, 25 Sup. Ct. 141, 49 L. Ed. 312, 1 Ann. Cas. 517. Therefore this right of this railway company to that surplus use of its right of way for a tele-

graph line which is of the value of more than $10,000 according to the evidence in this record, and the taking of which will inflict a loss and damage upon it of more than that amount, may not be lawfully taken from it by the telegraph company by condemnation without paying the railway company the fair value of that right; in other words, the amount of the loss inflicted upon the railway company by the taking.

But counsel for the telegraph company maintain that the weight of authority sustains an affirmative answer to the question under consideration and permits the taking by the telegraph company of this right to the surplus use of the railway company's right of way for the telegraph line of this telegraph company without making any compensation to the railway company for its value to the railway company, or for the railway company's loss by the taking, and they cite in support of their contention Chicago, Burlington, etc., R. R. Co. v. Chicago, 166 U. S. 226, 248, 250, 17 Sup. Ct. 581, 41 L. Ed. 979; State v. St. Paul, M. & M. Ry. Co., 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. Rep. 581, 8 Ann. Cas. 1047, affirmed in 214 U. S. 497, 29 Sup. Ct. 698, 53 L. Ed. 1060; Chicago, B. & Q. R. Co. v. Board of Supervisors, 182 Fed. 291, 294–297, 104 C. C. A. 573, 31 L. R. A. (N..S.) 1117; Morris & E. R. Co. v. City of Orange, 63 N. J. Law, 266, 43 Atl. 730, 47 Atl. 363; Postal Telegraph Cable Co. v. Oregon Short Line R. Co. (C. C.) 104 Fed. 623, 626, which was affirmed in 111 Fed. 842, 848, 49 C. C. A. 663; St. Louis & C. R. Co. v. Postal Tel. Co., 173 Ill. 508, 51 N. E. 382, 390, 392; Postal Telegraph Cable Co. v. Oregon Short Line R. Co. (C. C.) 114 Fed. 787, 792; Postal Telegraph Cable Co. v. Oregon Short Line R. Co., 23 Utah, 474, 65 Pac. 735, 738, 740, 90 Am. St. Rep. 705; Louisville & Nashville R. Co. v. Postal Telegraph Cable Co., 143 Ga. 331, 85 S. E. 110, 112, citing Atlantic Coast Line R. Co. v. Postal Telegraph Cable Co., 120 Ga. 268, 48 S. E. 15, 19, 1 Ann. Cas. 734.

This proposition is so startling and its effect so seemingly unjust that it demands careful study and serious consideration of the facts and opinions in the cases cited. Upon a careful examination of these cases it appears that in none of them did the courts examine, consider or decide that a stranger telegraph company could lawfully take from a railway company the latter's right to the surplus use of its right of way for telegraph purposes which the proof in the case showed had been utilized by the railway company, had produced substantial income and had substantial value to the railway company, without paying the value of that right to the railway company. The cases cited are cases in which, upon other facts and usually in the absence of any proof of the productiveness or value to the railway company of the right to the surplus use of its right of way taken the courts have used a general expression which the court below applied to the facts of this case and then supplemented with the express exclusion from the jury of the consideration of all evidence of the value of the right taken and of the amount of the loss inflicted by that taking. This is the general expression referred to:

"The compensation which a telegraph or telephone company must pay for the right of constructing and maintaining its lines upon a railroad right of way is the amount of decrease in the value of the use of such right of way for railroad purposes necessarily and reasonably resulting from its use by the telegraph or telephone company."

It is plain that when this declaration is applied to a case in which the right to the surplus use of the right of way taken for the telegraph line has not been proved to have been productive or to be of any value to the railway company the declaration is not prejudicial to it, and it is also clear that when the term in this declaration "right of way for railroad purposes" is given its broad and general signification of right of way for telegraph purposes as well as for railroad purposes, for as we have seen the telegraph purposes of a railroad right of way are adjuncts and appurtenances of its railroad purposes and a railroad company has as exclusive a right to the use of its right of way for telegraph purposes as it has for railroad purposes, the declaration is not, erroneous. But do the authorities sustain the contention that when the term "railroad purposes" in this declaration is restricted in meaning to the mere purposes of operating a railroad and keeping in proper physical condition the lands subject to its right of way, and the declaration is applied to a case in which the surplus use of the railway company's right of way for telegraph purposes which is being taken has been proved to have been productive of substantial income and to be of a value to the railway company of at least $10,000, and the declaration is accompanied with the instruction to the jury that in assessing the damages for the taking they may not consider any element of this value or of the loss of it by the railway company, this is a sound and just rule of law?

[4] As the facts upon which the opinions in the cases cited rest are materially different from those in the case at bar, it is indispensable to a just appreciation of these decisions and of the opinions in these cases, and of their bearing upon the crucial question in the case at bar, that in their examination and discussion these familiar rules announced by Chief Justice Marshall be borne constantly in mind:

"An opinion in a particular case, founded on its special circumstances, is not applicable to cases under circumstances essentially different." Brooks v. Marbury, 24 U. S. (11 Wheat.) 78, 90 (6 L. Ed. 423). And "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." Cohens v. Virginia, 19 U. S. (6 Wheat.) 264, 398, 399 (5 L. Ed. 257); King v. Pomeroy, 121 Fed. 287, 291, 58 C. C. A. 209, 216; Evans v. Victor, 204 Fed. 361, 367, 122 C. C. A. 531, 537.

Let us apply these rules to the opinions in the cases cited by counsel for the telegraph company.

The authority upon which counsel seem to place the most reliance is Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 248, 250, 17 Sup. Ct. 581, 590 (41 L. Ed. 979). In that case the city of Chicago was condemning the right to an easement for a street across the right of way of the railroad company. The railroad company sought to recover as damages the value of the land at the crossing subject to its

right of way, as land. The railroad company was not to be prevented by the street crossing from using its right of way for both railroad and telegraph purposes and there was no evidence that its right to its surplus use of its right of way for telegraph or railroad purposes at the proposed crossing ever had produced any income, or that it was of any value to the railroad company, or that the use of the crossing by the city would deprive it of any valuable use for either railroad or telegraph purposes. In this state of the case the court held that the railroad company could not recover the value of the land under its right of way as land because it did not own it. It declared that the general rule was as held in Boom Co. v. Patterson, 98 U. S. 403, 408, 25 L. Ed. 206, that compensation "is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future," but that there could be no recovery on account of the effect of the crossing on mere imaginary or speculative uses to which the right of way had never been applied, and further that under the facts of that case, in view of the police power of the city to establish streets, to fix their grades and to require railroad companies who take their franchises subject to this police power, to conform the grades of their railroads to the necessities of the crossings of such streets, and in the absence of any evidence of the value of any right to use its right of way for telegraph purposes or railroad purposes of which the railroad company would be deprived, or which would be damaged by the street crossing, the rule that "the measure of compensation is the amount of decrease in the value of the use for railroad purposes caused by the use for the purposes of the street" was not erroneous. How different the facts in the case at bar. The telegraph company in this case has no police power, and it seems clear from the opinion in the Chicago Case that if there had been proof that the crossing would deprive the railroad company of a right to the surplus use of its right of way for telegraph or for railroad purposes which it had exercised and had received substantial income from for 10 years, and which was worth $10,000 to it, the Supreme Court would have held that its case fell under the general rule declared in Boom Co. v. Patterson, and that it was entitled to recover the value of such right as damages. Because there was no evidence in that case of the value of any such right that existed and had been exercised by the railroad company and that would be taken or destroyed by the crossing, the court in that case neither considered, held, nor decided that a stranger corporation without police power could condemn and take the right of a railroad company to the surplus use of its right of way for either telegraph or railroad purposes which was worth $10,000 without making any compensation therefor, or any analogous doctrine.

The cases of State v. St. Paul, M. & M. Ry. Co., 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. Rep. 581, 8 Ann. Cas. 1047, affirmed in 214 U. S. 497, 29 Sup. Ct. 698, 53 L. Ed. 1060, Chicago, B. & Q. R. Co. v. Board of Supervisors, 182 Fed. 291, 294–297, 104 C. C. A. 573, 31 L. R. A. (N. S.) 1117, and Morris &

E. R. R. Co. v. City of Orange, 63 N. J. Law, 266, 43 Atl. 730, 47 Atl. 363, which merely hold that a railroad company may not recover of a city or county for the taking of an easement for a crossing of its right of way for a street or public drain the value of the land taken under its right of way for the crossing as land, and that such a city or county may, in the case of the condemnation of such an easement for a crossing, by means of its police power compel a railroad company to bear the expense of such changes in the grade and roadbed of its railroad as are rendered necessary by such crossings without payment of such expense for the reason that every railroad company takes its franchise subject to the police power of the state, the county and the city, and subject to its duty to make such changes whenever the city or county, in the exercise of that power, establishes such crossings, do not rule the case at bar nor decide or touch the question whether or not a telegraph company may take from a railroad company by condemnation the right to the surplus use of its right of way for telegraph purposes for a telegraph line which is worth $10,000 and has been producing a substantial income without making any compensation therefor. They do not rule this case or touch this question (1) because there was no evidence in those cases that the city or county was taking or destroying any valuable right to the surplus use of the railroad company's right of way for either telegraph or railroad purposes, and (2) because this telegraph company has no police power by virtue of which it can compel the railroad company to bear any such expenses as those specified in these cases or to suffer any such loss as the telegraph company seeks to inflict upon it here.

The next case cited by counsel is Postal Telegraph Cable Co. v. Oregon Short Line R. Co. (C. C.) 104 Fed. 623, 626, which was affirmed in 111 Fed. 842, 848, 49 C. C. A. 663. But the decision and the opinions in that case fail to rule or touch the question here at issue because there was no evidence in that case that the right to the surplus use of the right of way for telegraph purposes for the line there sought had any value or had ever brought any income, and of course in the absence of evidence of such value no question of compensation for that value could have arisen or have been decided. Judge Beatty found that the right to the surplus use which the telegraph company sought to take was not used for any purpose, was so much idle property and had no actual value. 104 Fed. 625; 111 Fed. 848, 49 C. C. A. 663. If there had been proof that the value of this right was at least $10,000, as in the case at bar, the instant question might have arisen, but it neither arose nor was decided.

Another citation is that of St. Louis & C. R. Co. v. Postal Tel. Co., 173 Ill. 508, 51 N. E. 382, 390, 392. But there was no competent evidence offered or introduced of the value of the surplus use of the right of way for the telegraph line sought in that case, and for that reason the question at issue in this case did not arise. Nevertheless, the opinion of the court indicates that if such evidence had been offered it would have been received and the value thus proved would have been allowed as damages. The railroad company sought as one element of its damages the value of the land between the poles over

which the wires were to be strung. In disallowing this element the court said:

> "The measure of damages, therefore, suffered by the railroad company is not the value of the land embraced within the right of way between the poles and under the wires; but the measure of damages is the extent to which the value of the use of such spaces by the railroad company is diminished by the use of the same by the telegraph company for its purposes."

This measure includes as damages to the railroad company the value of the use of the right of way for telegraph purposes as well as for railroad purposes, and, when there is no proof of any value of such use for telegraph purposes, necessarily leaves the measure of damages the diminution of the value of the right of way for the purposes of the operation of the railroad only. In that case the railroad company had made a lease before the condemnation proceedings of its right of way to another telegraph company for a telegraph line and the court below had rejected evidence of the rents received under that lease. The Supreme Court sustained that ruling on the express grounds that the particular lease made was "void upon grounds of public policy as being in restraint of trade and as creating a monopoly," and that the lease gave the use of the telegraph line to the railroad company for the purpose of moving its trains and managing its own business, and there was no proof or offer to prove the value of this latter use. 173 Ill. 538, 51 N. E. 392. There were no such objections to the proof of the value of the right to the use sought in the case at bar, and it is plain from the opinion of the Supreme Court of Illinois that that court would have admitted the proof and allowed the value presented in this case as an element of the damages to the railroad company. If that court had been of the opinion that such proof was never admissible and such value was never allowable as an element of such damages it would have said so and it never would have ruled out the evidence upon or mentioned the objections which it sustained to the offer of the proof of the value of the rents received under the void lease in that case.

Postal Telegraph Cable Co. v. Oregon Short Line R. Co. (C. C.) 114 Fed. 787, 792, is a case in which Judge Knowles assessed the damages for the taking of the right to the surplus use of the right of way of the railroad company for telegraph purposes for a line of telegraph at a nominal amount, $1 per mile; but it is evident that there was no evidence that the right to this surplus use taken had any actual value and that the instant question was not presented or considered, for the judge said:

> "The evidence in this case does not establish clearly that the defendant would suffer any peculiar or special damage by the taking, and hence what is considered a nominal damage merely can be awarded."

In the case at bar the evidence introduced and that rejected disclosed the fact that the railroad company would suffer special damage to the extent of at least $10,000 from the taking.

Postal Telegraph Cable Co. v. Oregon Short Line R. Co., 23 Utah, 474, 484, 65 Pac. 735, 738, 740, falls in the same category. "The

land," said the court, "which respondent seeks to condemn is not now used for any purpose. Practically it is now idle property, and the new use promises to be one of public utility." There was undoubtedly no evidence that the right to the surplus use for telegraph purposes which was about to be taken by the telegraph company had ever been utilized by the railroad company, or that it had any value in that case, and the remarks of the court in the opinion were made with reference to and are applicable to that state of facts alone. They cannot be deemed authoritative in a case in which the railroad company has utilized and has been deriving a substantial income from its right to the surplus use of its right of way for telegraph purposes which is being taken for a decade and where there was evidence of the substantial value of that right to the railway company.

The last case cited by counsel for the telegraph company is Louisville & Nashville R. Co. v. Postal Telegraph Cable Co., 143 Ga. 331, 85 S. E. 110, 112, a case in which the Supreme Court of Georgia, citing Atlantic Coast Line R. Co. v. Postal Telegraph Cable Co., 120 Ga. 268, 48 S. E. 15, 19, 1 Ann. Cas. 734, held that the rent which the railroad companies had received for the premises and which they might lose by the condemnation of the right to the surplus use of their right of way for a telegraph line should not be considered by the jury in assessing their damages. These two Georgia cases contain the only decisions which tend to sustain the theory of the telegraph company, and they rest on the premise that a railroad company is restricted to the use of its right of way for railroad and telegraph purposes to the sole purpose of the operation of its own railroad. They deduce from that premise the conclusion that it cannot have any property of value in its right to rent or to permit to others the surplus use of its right of way either for railroad or for telegraph purposes, a premise which has been shown to be unsound and contrary to the decision of the Supreme Court of the United States in Union Pacific Ry. Co. v. Chicago, etc., R. Co., 163 U. S. 564, 585, 16 Sup. Ct. 1173, 41 L. Ed. 265, by the opinion in that case and by the opinions in the other cases cited in the earlier parts of this opinion. Because these two decisions are founded upon this false premise and because their application to the facts of the case at bar would tend to deprive the railroad company of its undoubted right to the surplus use of its right of way for telegraph purposes which the evidence in the present record shows to be of the value of $10,000 without any compensation in violation of the fundamental rule of law that private property shall not be taken for public use without just compensation, they are not persuasive and ought not to be followed. All the cases cited by the telegraph company have now been reviewed and from this review it appears that in none of them, except the two Georgia cases, was the question in the case in hand either considered or decided, because in none of them was there any substantial proof or offer of competent proof of the value of the right to the surplus use taken, or of the fact that it had theretofore been utilized and had brought substantial income to the railroad company. They all fall under the rule that an "opinion in a particular case, founded on spe-

cial circumstances, is not applicable to cases under circumstances essentially different." Brooks v. Marbury, 24 U. S. (11 Wheat.) 78, 90 (6 L. Ed. 423).

On the other hand, the opinion of the Supreme Court of Illinois in St. Louis & C. R. Co. v. Postal Tel. Co., 173 Ill. 508, 51 N. E. 382, 390, 392, which has been reviewed above, shows that in its view the true measure of damages is the diminution of the value of the use of the railway company's right of way by the taking, not the mere diminution of the value of its right of way for the sole purpose of operating its own railroad, but the diminution of its value for any and all purposes for which the railway company has the right to use it, including its right to let or permit the surplus use of its right of way for telegraph purposes or for railroad purposes.

In Texas Midland R. Co. v. Southwestern Tel. & Tel. Co., 57 S. W. 312, 313, the Court of Appeals of Texas declared that the measure of damages for taking a part of the surplus use of the right of way of a railroad company for a telephone line was the decreased value to the railroad company of its right of way for its purposes.

In American Tel. & Tel. Co. v. St. Louis, I. M. & S. Ry. Co., 202 Mo. 656, 101 S. W. 576, 585, 586, a case which involved the exact question presented in this case, the right of a stranger corporation to take from a railroad company without compensation its right to the surplus use of its right of way for telegraph or telephone purposes, the Supreme Court of Missouri reversed the court below which had refused to allow as damages the value of the right to the use sought to be taken and said, among other things:

"That plaintiff, moving in the orbit of a delegated sovereign right for a public use, may condemn an easement in defendant's easement because of public policy is one thing; to take away property rights under a judicial pronouncement that they are of no value is quite a different thing. The public is by no means interested in plaintiff's taking defendant's property rights for nothing. The same public policy that allows plaintiff to intrude itself, sub modo, and by compulsion absorb some of defendant's property rights, recognizes that plaintiff should make full recompense (i. e., 'just compensation'), not only for the property taken, but for the damage ensuing, if any. * * * The testimony does show that it would not be practicable to have more than one line of poles, with their appurtenant aerial cross-arms and wires, on any one side of the main track. As said, the Western Union Telegraph Company now occupies one side of the right of way. If plaintiff is allowed to occupy the other, and put its poles at such distance from the track as to not endanger railroading, and such a distance from the edge of the right of way as to reduce to a minimum its own danger from falling trees and limbs off the right of way, then it will occupy the only remaining position on defendant's right of way now unoccupied and suitable for a telegraph and telephone line. In this condition of the proof it results that, given plaintiff's easement, then the right of defendant (if of any value) to construct another telegraph and telephone line is gone. If we assume that defendant has no need for another line and would not build it, shall we also assume that the place plaintiff proposes to occupy has no rental or permit value—that defendant could not rent such privilege to another telegraph company in connection with its railroad business? It was in evidence that defendant rented a corresponding privilege under some running arrangement to the Western Union at a substantial remuneration. We must not be understood as holding that the terms of this contract are admissible in evidence as tending to show the rental value on the other side of the right of way. The terms of

that contract were complex and singular, involving a swapping of services and accounts and tending (it is said) to create a monopoly. They throw no light on the issue here further than the mere fact of the existence of a renting contract tended to show there was somewhat of a market for such privilege. Suppose defendant repent of its sin of granting a monopoly to the Western Union, and determines to sin no more, shall it be debarred the right to permit another line? That a railroad company, as long as it does not disarm itself of the power to live up to its duties, as a public service corporation, may build and maintain or may rent a permit to build and maintain a telegraph line on each side of its right of way, ought not to be doubted; such use being an adjunct of railroading. This right is a property right, and under the evidence here we cannot say it was of value only in name. To get at defendant's damage, it is proper to put the whole environment before the jury, and adopt the same common-sense methods employed by private individuals under similar circumstances."

This seems to be a reasonable view of this matter and the reason of the case and as careful a study of the decisions as we have been able to make have led to these conclusions.

The railway company by virtue of the ownership of its right of way had the right to use the portion thereof necessary for the operation of its railroad for the maintenance and operation of a telegraph line. It had a like right to lease or permit the right to the surplus use of its right of way for telegraph purposes and to collect and have reasonable remuneration therefor. There was competent and substantial evidence that it had utilized this latter right and had derived a substantial income from the right which the telegraph company was seeking to take from it for the period of 10 years and that the value of this right was more than $10,000. The telegraph company has the right to take and is taking this right by condemnation for its own use. It cannot lawfully so take or damage this right without making compensation for such taking and damage and it cannot make just compensation without paying to the railway company the value of the right to the surplus use of its right of way for telegraph purposes which it proposes to take, together with any other damages caused to the railway company by the taking. The true measure of damages in such a case is the difference between the value of the use of the railway company's right of way by it for telegraph, telephone, railroad and other purposes for which it may lawfully use it before, and the value of that use after, the proposed taking, and the ordinary rules of evidence govern the competency and materiality of evidence of these damages and of the value of the right taken.

Many of the questions presented in this case were disputed, not only between the litigants, but also among the courts, and the court below was led in this conflict of authorities erroneously to exclude evidence of, and the consideration by the jury of, the value to the railway company of its right to the surplus use of its right of way for telegraph purposes which the telegraph company was taking.

The judgment below must be reversed and the case tried again; and it is so ordered.