## CENTRAL R. CO. OF NEW JERSEY v. UNITED STATES PIPE LINE CO.

(District Court, E. D. Pennsylvania. June 12, 1923.)

### No. 8, April Term, 1905.

1. **Carriers ☞7—Railroads ☞81—Contract between railroad company and pipe line company granting right of way for pipe line held not ultra vires.**

    A contract by which a railroad company granted to a pipe line company the right to lay a pipe line on its right of way *held* not ultra vires of either company, where under the laws of the state such right of way for the pipe line might have been condemned by a corporation having power of eminent domain, though the grantee company did not have such power.

2. **Carriers ☞32(2)—Contract, one provision of which required carrier to transport shipments at less than legal rates, held illegal and void.**

    A contract between a railroad company and a pipe line company by which the latter was granted right of way for its pipe line over the railroad right of way, in consideration for which it agreed to ship a stipulated tonnage of oil over the railroad in interstate commerce at a fixed rate, which was less than the published rate, *held* indivisible and illegal, and not enforceable by either party.

3. **Contracts ☞138(2)—Part performance of illegal contract does not render it enforceable.**

    That a contract in violation of law has been performed by one party, the part performed including that part which was illegal, does not entitle such party to enforce it against the other.

At Law. Action by the Central Railroad Company of New Jersey against the United States Pipe Line Company. Sur trial hearing before the court sitting without a jury. Judgment for defendant.

Dickson, Beitler & McCouch, of Philadelphia, Pa., for plaintiff.
Eugene Mackey, of New York City, for defendant.

DICKINSON, District Judge. This case was submitted to a jury, but before verdict the parties asked to have a juror withdrawn and the case continued, so that trial by jury might be waived and the cause be determined by the court.

## The Preliminary Fact Situation.

There are no evidential facts in controversy and but one ultimate fact finding to be made. The plaintiff is an interstate railroad carrier, and the defendant an intrastate common carrier of oil, transported by being pumped through pipes. For present purposes the railroad of the plaintiff may be said to extend through Pennsylvania to Jersey City, N. J., and the pipe line of the defendant from Franklin, Pa., to tidewater at Marcus Hook, Pa. The defendant is incorporated under the Act of Assembly of Pennsylvania of June 2, 1883 (Pa. St. 1920, §§ 6139–6144). The original plan of the defendant was to tap the oil fields of Pennsylvania in the Venango, Crawford, and McKean district, and to pipe crude and refined oils to the line of plaintiff's railroad, and thence by pipe, rail, or both to reach the seaboard. Its business was almost wholly confined to the foreign export trade. Its plan further contemplated the use of the right of way of the plaintiff for the pipe line right of way.

## The Ante Contract Situation.

As the plaintiff carried oil among other freight, the pipe line company might become a valuable feeder to the railroad or a competitor, according to whether the defendant shipped oil over the railroad or transported it wholly through its pipes. The right to use the right of way of the plaintiff for pipe line purposes was expected to be of great value to the defendant.

## The Contract.

Out of this situation grew the contract. By it the railroad company agreed to do two things: (1) To grant to defendant a pipe line right of way. (2) To carry oil to tidewater for a fixed toll.

The pipe line company agreed to do three things: (1) To pay the agreed tolls on oil shipped. (2) To ship not less than a stipulated quantity. (3) To pay on agreed shipments not made 40 per cent. of agreed tolls.

## The Aftermath.

The pipe line contemplated was never laid. The defendant began its construction, but it was stopped by injunction proceedings in the attempt to cross the interposing right of way of another railroad. The intended line was then abandoned and another line built without any use of plaintiff's right of way. No part of the latter was ever used. The pipe line was, however, built to the defendant's railroad, and shipments of oil were made. These shipments were all paid for at the agreed rate, but no payment was made on the shortage in shipments. It is for this latter claim the present action was brought. The tariff filed by plaintiff with the Interstate Commerce Commission called for rates much in excess of the rates charged the defendant. The shipments were interstate for export to foreign countries.

## The Case for the Plaintiff.

The cause of action set up is that the agreement was a demise of the surplus part of plaintiff's right of way, the reserved rental being

a sum measured in terms of tonnage of shipments made and shortage on agreed tonnage not made. The demand is for the unpaid part of this rental.

## The Defense.

The defense is twofold: (1) Ultra vires, in that the plaintiff had no lawful power to make, nor the defendant to accept, the grant respecting which they contracted. (2) The transaction was an unlawful one, condemned by the act of Congress of 1887 creating the Interstate Commerce Commission (Comp. St. § 8563 et seq.).

## Discussion.

The fretful porcupine presents no greater number of points to his enemies than rush upon the mind the moment it is turned upon this transaction. In consequence, we are quite willing to limit the discussion, as counsel have done to the two points of the defense indicated. Whatever the strength of these defenses, any party who invokes them strikes a very ungracious attitude. There is room always for the distinction between justice and legal justice. What is called the natural sense of justice feels affronted when one who has in good faith made with another, acting in like good faith, a contract, and after receiving the benefit of it, the latter, when called upon to perform his part, sets up his legal incapacity to make it, or seeks to gain an advantage for himself through his own wrongdoing. The aim of the law, and every one who administers it, is to bring justice and legal justice into consonance. If discord appears it is because legal justice is conventional, and there is no common standard of natural justice, or because some policy of the law intervenes; the general good being done at the cost of partial evil. In the effort to keep natural and legal justice in pari passu, neither the doctrine of ultra vires nor that of the illegality of the contractual objective will be applied to destroy the obligation of a contract, if the contract can fairly be given a construction which will make it binding and lawful. Reason sanctions and authority supports the effort to give to every contract such a meaning.

[1] The argument of counsel in support of the first branch of the defense possessed the merit of both clarity and forcefulness. Notwithstanding this, we confess to an inability to quite grasp the thought that this contract is ultra vires of either of the contracting parties. It is true that the Pennsylvania statute of 1883 limits the right of incorporation, and grants the power of eminent domain only to pipe line companies whose operations are confined within state lines. It is true, also, that the estate held by a railroad company in its right of way is a base fee, and its use and enjoyment thereof is solely for its corporate purposes. Nevertheless this contract can be fairly read as a contract granting to the defendant that which it had the right to acquire, and as, since the Pennsylvania Constitution of 1874, the property of a corporation may be taken for public purposes, we see no legal objection to its voluntarily granting that which might be taken in condemnation proceedings. Indeed, every statute of which we know which confers the power of eminent domain expressly enjoins an effort to agree upon the taking before the power to take can be exercised. It is likewise

true that the agreement contemplates and may be said to anticipate a pipe line construction beyond the lines of the state, but there is no compulsion to read this as meaning that it is to be done before the lawful power to do it exists.

Without further elaboration, we state our conclusion that we find no merit in the ultra vires branch of the defense.

[2] This takes us to the second branch. There can be, we assume, no doubt that a contract by the railroad company to give the defendant a preferential toll rating flies in the face of the act of Congress of 1887. As the law will not tolerate its own defiance, the attempt to so do is rendered null. A hasty, or indeed any first, reading of this contract, leaves the impression (at least it did upon our mind) that all that the transaction came to was a demise or other grant of what we have called the surplus or unused portion of the railroad right of way for the purpose of a pipe line use which would in no way interfere with the operation of the railroad, and that the compensation to be received was merely measured by a sum which was itself measured by a tonnage shipped at a fixed rate, and that the tonnage to be shipped merely established the minimum sum to be received.

By a more careful reading there is more than this disclosed. The problem presented to the plaintiff then becomes that of the chemist, who eliminates a poison held in solution by precipitating it. Can the illegal features of this contract be separated from the legal, so that the latter may be enforced and the former avoided? It is easy to yield to the impulse of indignant sympathy, when an innocent injured party indulges himself in the pleasure of a denunciation of the wrong done him and condemnation of the wrongdoer. When, however, the complainant is himself the wrongdoer, has received a benefit from the wrong done, and is expecting further benefit from its undoing, the impulse of sympathy is halted, and we hesitate to keep in step with the complainant. It is difficult to stop the flutter of our ethical standards under such circumstances. There is a policy of the law with which the law concerns itself in utter indifference to and disregard of the consequences to individuals. When two persons engage in an illegal act, either may benefit or either be injured. If the injured party applies to the law for redress, the law turns away its eyes, refusing to look upon the injury, and turns a deaf ear to the complaint, leaving the parties to lie in the bed which they have made for themselves.

The act of Congress of 1887 made it the policy of the law to require transportation in interstate transactions to be afforded all on equal and the same terms. All devices or contrivances by which this requirement of the law was evaded are placed under the ban of the law and are illegal. This law does not concern itself with other transactions. Compensation for property taken might be adjusted between the parties in any way they chose, but if transportation in interstate commerce is to be given it can only be given at the posted tariff tolls.

The ingenuity displayed by counsel for plaintiff made the discussion interesting in the attempt made to make this contract severable and enable the plaintiff to recover upon that one of the two contracts (into which the whole was divided) which was found to be lawful. There can be no such severance without lethal consequences. There is but

one contract. The motives of the contracting parties differed. The consideration moved in opposite directions. The defendant wanted a right of way for which it expected to pay; the plaintiff saw an opportunity to increase or make sure of a freight tonnage. The one object could lawfully be reached through a special contract; the other could not.

There is much plausibility in the argument that in consequence two contracts were made—one, to pay for the right of way; the other, to pay for oil transported by rail. The latter, even if an unlawful contract, has been performed. At all events the plaintiff is not seeking its enforcement. The former is a lawful contract and has not been performed by the defendant. This latter and lawful contract is the one upon which the plaintiff stands in asking to have performance enforced.

The argument rests upon the proposition (which is in itself a sound one) between a thing and the same thing used merely as the measure of something else. It might be made unlawful for parties to enter into a contract for the sale and purchase of yardstick measures. A contract for the purchase and sale of cloth by the yard would not thereby be made unlawful. It may well be that plaintiff might lawfully have agreed to carry oil for the defendant at the lawful toll, and the defendant have agreed to ship not less than a stipulated tonnage in consideration of the grant of a pipe line right of way. What they did do, however, was to agree to violate the act of 1887 in consideration of the grant of a right of way. The flat defiance, or at least ignoring, of the command of Congress, cannot be hidden by the distinction between carrying freight at an unlawful toll rate and carrying it at a rate which is measured and determined by the same unlawful rate, nor by ignoring the difference between a severable contract and a divisible consideration.

[3] As has been said, there was but one contract. The plaintiff granted the pipe line right of way in consideration of which it received the agreement of the defendant. This was in the form of a promise to ship at least the stipulated tonnage and to pay therefor an agreed toll. The agreed toll was not in accord with the posted tariff. The contract was a forbidden, and hence an unlawful, one. The plaintiff could not be held to it nor can the defendant. It is upon this promise the plaintiff's right of action is based. The law removes its very foundation, and the structure built upon it must fall. We cannot see that the partial performance of an illegal contract in any way saves the illegality of what the law is asked to enforce. A forbidden contract is void. It is a dead thing, into which no life can be breathed. The refusal to enforce it is not an indulgence extended to the defendant. It is that the law will not aid in its own defiance.

The conclusions reached are, we think, in accord with the decided cases to which we have been referred, among which are: Union Pacific Railway Co. v. Chicago, Rock Island & Pacific Railway Co., 51 Fed. 316, 2 C. C. A. 174, and 163 U. S. 581, 16 Sup. Ct. 1173, 41 L. Ed. 265; Northern Pacific Railway Co. v. Northern American Telegraph Co., 230 Fed. 347, 144 C. C. A. 489, L. R. A. 1916E, 572; Ellerman v. Chicago Junction Ry. Co., 49 N. J. Eq. 242; American Rail-

way Express Co. v. Lindenburg, 43 Sup. Ct. 206, 67 L. Ed. ——, not yet [officially] reported, but decided by the United States Supreme Court January 8, 1923; Pittsburgh Construction Co. v. West Side Belt Railroad Co., 154 Fed. 929, 83 C. C. A. 501, 11 L. R. A. (N. S.) 1145; Utah Construction Co. v. St. Louis Construction Co. (D. C.) 254 Fed. 321; Hazelton v. Sheckells, 202 U. S. 71, 26 Sup. Ct. 567, 50 L. Ed. 939, 6 Ann. Cas. 217; Connolly v. Pipe Co., 184 U. S. 548, 22 Sup. Ct. 431, 46 L. Ed. 679; Trist v. Child, 21 Wall. (88 U. S.) 441, 22 L. Ed. 623; Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 899; Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681; Cleveland, etc., Ry. Co. v. Hirsch, 204 Fed. 849, 123 C. C. A. 145; McMullan v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274; Perrine v. Chesapeake & Delaware Canal Co., 9 How. 172, 13 L. Ed. 92; Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; St. Louis R. R. Co. v. Terre Haute R. R. Co., 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748.

## Findings of Fact.

(1) The agreed freight tolls to be paid by defendant to plaintiff for interstate shipments, for which the plaintiff's action is brought, were not the tolls named in the posted tariff, to which both parties were bound to conform.

## Conclusions of Law.

(1) The contract sued upon is illegal and void.

(2) The defendant is entitled to judgment, with costs.

The formal requests for findings of fact and conclusions of law submitted, and the answers thereto, are filed herewith and made part hereof. To give definiteness of date to the judgment entered, no judgment is now rendered, but either party may move for judgment, in accordance with this opinion, and jurisdiction of the cause is retained for this purpose.

Exceptions are allowed to the respective parties to all rulings made.