## CITY COUNCIL OF AUGUSTA *v.* GEORGIA RAILROAD & BANKING COMPANY.

1. In order to authorize a municipal corporation to take for the purpose of opening or extending streets property already devoted to public use, the power must be conferred in express terms, or by necessary implication.

2. A general power conferred by legislative enactment upon a municipal corporation "to open new streets, change, widen or to extend streets already opened, within the corporate limits," does not expressly confer upon the municipality the authority to take and use for this purpose land already in use by a railroad company for purposes embraced within the provisions of its charter.

3. In determining whether or not such authority arises by necessary implication in a given case under the above recited enactment, the legislative intent is to be arrived at by applying the statute to the subject-matter. If both the uses may not reasonably stand together, or the latter use when exercised must necessarily supersede the former, the authority is not to be implied; otherwise, it may be.

4. The trial judge having found, upon the facts submitted at the hearing for an interlocutory injunction, that the two uses were utterly inconsistent, there was no abuse of discretion in granting a temporary injunction against the municipal authorities, and thus leaving the questions of law and fact arising in this case to be adjudicated at the final hearing.

February 29, 1896.

Injunction. Before Judge Callaway. Richmond county. November 29, 1895.

The City Council of Augusta commenced proceedings at law to condemn, for the purpose of extending Cumming

11

street, certain land belonging to the railroad company, upon which are situated numerous tracks, switches, etc., in constant use in the business of the railroad; whereupon the railroad company brought its petition for injunction against said proceedings. It showed, as reasons against the opening of the street across its tracks, that the point at which it would cross them is within the yard limits of the railroad, where they contract and where the tracks and switches are necessarily crowded; that to make this place a street crossing would greatly impede and retard the passing of engines and trains in the necessities of the railroad business; that such crossing would require the employment of at least one watchman at all hours of the day and night, at heavy expense to plaintiff, and even with such watchman the crossing would be extra hazardous to pedestrians and vehicles; that the delays and obstructions and the risks of damage to be incurred by the opening of the street would compel plaintiff to remove its yard and all its tracks, switches and turnouts to a different locality outside of the city. It was further alleged, that the property sought to be used for the street is already appropriated, under the charter of the railroad company, to another public use, and cannot be again taken unless by express legislative authority; that there is no necessity to take the land in question for public use; and that the City Council of Augusta has no legal right, with or without paying compensation, to take the land for a street. As cause against the grant of the injunction the city set up, that the allegations of the petition present no legal or equitable reason why the street should not be opened; that the city has full authority, not only under its general powers as a municipal corporation, to lay out and open streets, but special authority is given therefor under act of the General Assembly of August 24, 1872, authorizing the city by ordinance to open new streets, change, widen or extend a street or streets already open within the corporate limits of the city;

and by an amendatory act of February 26, 1874; that the legislative question of the necessity for taking the land in question for public use has been determined by valid ordinance of the city council; and that the city has the right, upon the payment of just compensation, to the condemnation of an easement, it appearing that the city is not seeking to take the land but only to acquire an easement over it, to be used in conjunction with the railroad.

In granting the injunction the judge held, that the city was without legislative authority, either by express provision or by necessary implication, to condemn the property in question for opening the street; and that, under the evidence, the opening of the street would practically amount to a destruction of the railroad company's use of its yard for shifting and drilling cars, though it might not seriously interfere with the lesser use of the main tracks for the ordinary travel of trains. The city assigned these rulings as error, contending, as to the former, that the legislative acts before cited gave authority to condemn the easement; and as to the latter, that while plaintiff had many affidavits that such use would seriously interfere with and retard the work, be extra hazardous, etc., when analyzed this testimony simply showed that the railroad might at times be inconvenienced or somewhat delayed, and that if the street were attempted to be used with equal rights to the public and the railroad, the latter would be obliged to remove its yard; but it was admitted, and the law requires, that as the railroad has the prior use it would have the prior right of way, and there would certainly be no damage or delay to the railroad's work, as it would be physically impossible for the *locus in quo* to be used at one and the same time by the public and the railroad; and, the city seeking to condemn nothing but an easement at grade, there was, within the meaning of the law, no taking of the property which had been impressed with one public use and devoting the same to another public use.

*M. P. Carroll* and *W. T. Davidson,* for plaintiff in error.
*Joseph. B. & Bryan Cumming,* contra.

ATKINSON, Justice.

1-2. We do not think the court in the present case erred in granting the injunction prayed for. The proposition that the devotion of property under statutory authority to a public use protects it against a subsequent appropriation to another and inconsistent use, unless such subsequent appropriation be by virtue of express statutory authority, or rest upon a power which is necessarily implied from the nature of the uses and purposes declared in the subsequent grant, seems to be well established. That the right of eminent domain extends to property which has already been appropriated to a prior public use is not doubted, nor is the proposition open to question that the legislature by express enactment may authorize the appropriation of the property already devoted to a public use to another and entirely inconsistent public use, whenever the necessities of the public so require, or if the legislature, while not expressly authorizing the appropriation to a public use of property so previously applied, confers a second grant, in the exercise of which it is absolutely indispensable that property held under a prior appropriation shall be devoted to the public use· so thereafter declared, the power to so apply it may be implied; but it is equally well settled that a general power conferred upon municipal corporations to open new streets, to change, widen or to extend streets already opened within the corporate limits, does not expressly or by necessary implication confer upon such municipality the authority to take and use land already appropriated to a public use. This proposition may be well illustrated by reference to such a hypothetical case as one which we will now proceed to state: The State of Georgia, at an expense of a million dollars or thereabout, has within the city of Atlanta erected a magnificent public building for the accommodation of the various departments

of the State government, including the legislative, judicial, and executive. To that end it has appropriated a considerable quantity of land lying in the heart of a populous city. Power generally is conferred upon the municipal corporation in which this property is situated to open and extend streets, and lay out new ones, in the discretion of the mayor and council of the City of Atlanta, whenever the public necessities may require them so to do. Have the city authorities of Atlanta, under the power thus granted, the right to lay out, extend and open streets which would lead through the capitol building? To ask the question is to answer it in the negative. Yet it cannot be doubted that the legislature could, by express enactment, confer upon it such a power. While, of course, it is beyond the range of human probability that such a thing will occur, we know of no legal obstacle to the exercise of such a power by the General Assembly. It has accordingly been held, that "under a general authority to lay out highways, a part of the right of way of a railroad cannot be taken longitudinally." See 39 N. J. L. 28; 36 Conn. 255. "Nor can the way be laid through depot grounds." See 30 Minn. 359; 23 Minn. 167; 91 N. Y. 552. Nor through lands occupied by a railroad company for shops (53 *Ga.* 120) "and the like, which are devoted to special uses in connection with the road and necessary to its operation and in constant use in connection therewith." Lewis on Eminent Domain, §266.

3. Where, in the absence of express legislative authority to so appropriate the property devoted to a prior public use, it becomes important to inquire whether such power arises from necessary implication in a given case, the legislative intent is to be arrived at by applying the enactment to its subject-matter. In sparsely settled communities, it is possible to establish a public way across the track of a railroad company without serious embarrassment to the company in the exercise of its corporate franchises, and in such

a way as the second use may be reasonably consistent with the first.    If the conditions are such that they may be reasonably made to consist, there is no such encroachment upon the prior public use as even appreciably to impair, much less extinguish it; and therefore, even though some slight inconvenience may result to the prior occupant, there is no reason why a second public use, when granted even in general terms, may not be held to confer upon the public authorities the right in such manner to exercise it.    A different result follows, however, when the enjoyment of the second use involves the practical extinguishment of the former, or renders its exercise so extremely inconvenient and hazardous as practically to destroy its value.    In such a case, the right to enjoy the second use must rest upon express legislative authority, and will not be implied.    The exercise of the second use, under such circumstances, would amount to a forfeiture of the first.    Forfeitures, as a general rule, are not favored, will never be implied, and least of all where the effect would be to deprive one of a substantial right which he enjoyed under a valid subsisting legislative enactment.

4. In the present case the circuit judge found, upon the facts submitted at the hearing, that the two uses sought to be impressed upon the same lands were utterly inconsistent, and that to allow the City Council of Augusta to open the street in question at the point designated, would amount to a virtual extinction of the prior right of the railway company.    In the absence, then, of express legislative authority for so doing, the power could not be implied from the general grant of power in the municipal authorities "to open new streets, to change, widen or extend streets already opened within the corporate limits."

There was sufficient evidence in support of the ruling of the judge to sustain his finding, and he properly granted an injunction until such time as a jury should be empanelled to determine the questions of fact involved.

*Judgment affirmed.*