SOUTHERN RAILWAY CO. *v.* CITY OF ROME *et al.*

The court below did not err in refusing the injunction sought.

DECEMBER 13, 1913.

Petition for injunction. Before Judge Wright. Floyd superior court. April 24, 1913.

*Maddox, McCamy & Shumate* and *Hamilton & Hutchens,* for plaintiff.

*Max Meyerhardt* and *Maddox & Doyal,* for defendants.

BECK, J. The City of Rome instituted condemnation proceedings against the Southern Railway Company, wherein the city sought to have condemned a strip of land through the yards of the railway company for the purpose of opening a public street in the city over the land condemned. The railway company filed its petition seeking to enjoin the opening of the street, on the ground that the same would so seriously impair the use of its yard as to practically destroy it. The evidence introduced at the interlocutory hearing was conflicting as to the seriousness of the injury which would result from the opening of the street through the yard. Concerning the extent to which the opening of the street would be inconsistent with the use of the tracks in the yard by the railway company, the evidence shows that there were six tracks in use for switching and storing cars, and that a switch in one of the tracks was within the limits of the proposed street. The testimony introduced by the city was in conflict with that introduced by the railway company, as to the danger resulting from the use of the street by the public, inconvenience which would result to the company from the opening of the same, the public utility, and the necessity for the proposed street, etc. The judge refused the injunction, and the petitioner excepted.

Counsel for the plaintiff in error base their contention that the court erred in refusing to grant the injunction mainly upon the proposition that the right of eminent domain conferred upon the defendant municipality does not extend to property which has already been appropriated to a prior public use of the kind for which these yards are now being used by the railway company. It is admitted that the city may exercise the right of eminent domain for the purpose of acquiring land to be used as streets and alleys; but it is insisted that this right to condemn land already appropriated to a public purpose, for a use inconsistent with that purpose, must be expressly granted, and that there is no section or clause of the charter of the City of Rome which authorizes the appropriation for street purposes of property in use as a railway yard. In the case of *City Council of Augusta* v. *Georgia Railroad Company,* 98 *Ga.* 161, 164 (26 S. E. 499), it was said: "That the right of eminent domain extends to property which has already been appropriated to a prior public use is not doubted; nor is the proposition open to question that the legislature by express enactment may authorize the appropriation of the property already devoted to a public use to another and entirely inconsistent public use, whenever the necessities of the public so require." And in the case from which this excerpt is taken it was held that the City Council of Augusta was properly enjoined from proceeding to condemn certain land belonging to the petitioner, a railroad company, upon which were situated numerous tracks, switches, etc. But the ruling in that case, to the effect that the grant of injunction was proper there, was predicated upon the fact that under this court's construction of the charter of the City of Augusta the authority to take and use land for the purpose of opening new streets, etc., which had already been devoted to another public purpose, was not expressly conferred by the legislature upon the municipality; although a general power was conferred in the charter upon the municipality to "open new streets, change, widen, or to extend streets already open within the corporate limits." But in the charter of the City of Rome the section conferring the power to condemn property for the purpose of opening streets is much broader, and in clear and unequivocal terms confers upon the municipality the express authority to condemn lands already devoted to railway uses and other public purposes. The language of

the legislative enactment to which we refer is found in the act to create a charter for the City of Rome, approved August 17, 1909, and in the 51st subsection of section 27 (Acts 1909, p. 1285). That part of this section covering the subject with which we are now concerned reads as follows: "Said city may also cause buildings, structures, or other things in the way of any street, sewer, or other public improvement to be taken down, removed, or appropriated, upon payment of damages as provided by law; and may enter upon, seize, appropriate, and condemn, for streets, alleys, sewers, drains, parks, cemeteries, or other public purposes, all lands, easements, and rights of way, of any person, company, or corporation owning, controlling, or having an interest in any steam railroad, electric or other street railway, or any other property, whether used for private or public purposes, and whether such lands, easements, and rights of way or other public or private property be occupied by any person, company, or corporation or not, upon payment of damages for the purpose so taken. And in case the parties at interest can not agree, then the city may proceed to assess the damage as provided by the laws of Georgia set out in sections 4657 to 4686, inclusive, of the Code of 1895." The language of the legislative enactment just quoted is so clear that no construction of the same is necessary, and no argument is required to show that the express authority referred to in the excerpt from the case of *City Council of Augusta* v. *Georgia Railroad Co.,* supra, has been conferred upon the City of Rome. See also, in this connection, the case of City of Terre Haute *v.* Evansville &c. Railroad Co., 149 Ind. 174 (46 N. E. 77, 37 L. R. A. 189), in which substantially the identical question which we have before us was dealt with at length; and the ruling there made is in line with the proposition of law stated in the case from our own decisions referred to above. In view of this we do not think the court erred in refusing the injunction.

<div align="center">

*Judgment affirmed. All the Justices concur.*