## 22195. SOUTHERN RAILWAY COMPANY v. STATE HIGHWAY DEPARTMENT.

CANDLER, Justice. This litigation arose when the State Highway Department, acting for and in behalf of the State of Georgia, filed a proceeding in rem under Ch. 36-11 of the Code to condemn and thus acquire absolute title to a described strip of land in Jackson County for the purpose of widening and reconstructing an existing State-aid road. The area sought to be acquired is located in the City of Commerce and a portion of the Southern Railway Company's depot is located on a part of it and the petitioner seeks and prays for the right to tear down and remove the remaining part of its depot on land adjacent thereto. The petition names the Southern Railway Company as a defendant and alleges that it is the ostensible or apparent owner of the property involved. The defendant railway company demurred to the petition as amended on the

grounds that the State Highway Department is without power or authority to institute or maintain the proceeding it filed; that it alleges no facts sufficient to show a right in the petitioner to proceed under Chapter 36-11 of the Code; that it was not brought by officials authorized to act for the State under the provisions of such chapter; and that it seeks to take property and rights of the defendant railway company not subject to condemnation for State-aid road purposes. Its demurrers were overruled and error is assigned on that judgment. The defendant railway company answered the amended petition and denied that there was any necessity for taking and destroying its property for public road purposes and it also objected to the condemnation and destruction of its property on the following grounds: 1. The property sought to be condemned is improved property which it owns, occupies and uses for a public purpose, namely, its depot in the City of Commerce which is on its railway line extending from Athens to Lula, Georgia, at which latter point junction is made with its main line trackage extending from New Orleans via Atlanta to Washington, D. C. and through such junction at Lula to all other points on its railway system. 2. The defendant railway company is a corporation operating as a common carrier in both interstate and intrastate commerce and the taking and destruction of its property is an unwarranted and undue burden on interstate commerce which directly affects such commerce and constitutes an illegal and unconstitutional exercise of the power of eminent domain and for that reason violates and offends the provisions of Art. I, Sec. VIII, Par. III of the Constitution of the United States (*Code* § 1-125) which provides that "The Congress shall have power . . . To regulate Commerce with foreign Nations and among the several states . . ." 3. If condemnation of the defendant railway company's property is allowed, its depot at Commerce will be completely destroyed and the present public use thereof extinguished, and the small portion of its depot property left will be insufficient to accommodate its present depot needs at Commerce, much less the expanded needs reasonably to be expected. And paragraph 4 of the defendant railway company's answer and objections, as amended, alleges that such taking and destruction of its property is arbitrary, unreasonable, capricious and wholly unnecessary for State-aid road purposes and is an attempt

to abuse and misuse the power of eminent domain and will illegally destroy an existing public use, in that: (a) While the avowed purpose is to widen an existing public highway, such widening is only through the defendant railway company's depot property, while such highway continues through the adjoining business district of Commerce without similar widening, thereby nullifying any benefit to highway traffic needs. (b) A considerable part of the property sought to be taken and destroyed is outside the right of way as widened, and is in no way needed or useable for highway purposes. (c) The taking and destruction of its depot property and the widening of such highway at that location serves no public need for State-aid road purposes, and such widening will require a rerouting of highway traffic around the business district of Commerce, and especially a rerouting of traffic around and away from the bottleneck where such highway leaves the defendant railway company's land and enters the adjoining business district. (d) The real purpose of this taking and destruction of the defendant railway company's property is to satisfy the private desires of those who object to the location, sight and appearance of its depot, and to promote the private business interests of those who are seeking trade from highway traffic. (e) The existing paved roadway abutting the defendant railway company's property is at present of adequate and sufficient width to accommodate the traffic requirements of the State-aid road for which the property sought to be condemned is alleged to be needed. (f) The highway improvement for which this property is sought to be condemned will widen the existing highway only in that segment abutting the defendant railway company's property for a linear distance of approximately 400 feet. The highway south of this segment will remain only 24 feet wide. The present highway through this segment is 31 feet wide and at present is used for traffic movement and also for parking purposes since vehicles presently park on both sides of the street. The proposed widening of this segment will result in a street width at that point of over 50 feet to handle traffic carried on a 24 foot wide highway. (g) The existing highway through this segment is not only of ample width to accommodate the traffic needs of the State-aid road sought to be improved, but is a safer highway design for traffic approaching the business section of Commerce from

the south, in that it affords a natural and gradual change in the course of vehicles approaching the railroad crossing to the north of such segment, where north bound traffic meets one-way south bound traffic which crosses over to the north side of the defendant railway company's tracks. (h) There is no State-aid road purpose necessitating or requiring the use of the property sought to be condemned in this proceeding. (i) The property sought to be taken constitutes no hazard or restriction to the volume or orderly flow of traffic nor is it a hazard to the safety of the traveling public; and this is so, since such traffic now moves in and through the City of Commerce both easterly and westerly along the segment of highway which abuts the property sought to be taken. The defendant railway company prayed for a hearing and for a determination of its objections; that its objections be sustained; that the condemnation proceeding be dismissed; that pending such hearing and determination no further action toward the appointment of assessors and the fixing of value and damages be held; and that the petitioner be temporarily and permanently enjoined from taking any further action in its condemnation proceeding. The petitioner demurred and moved to strike the defendant railway company's answer and objections on the ground that they allege no facts sufficient to show that petitioner does not have a right to condemn the property involved for State-aid road purposes. Its demurrer and motion to strike were sustained and the defendant railway company also assigned error on that judgment. *Held*:

1. There is no merit in the defendant railway company's contention that the trial judge erred in overruling its demurrers which attack the petition as amended. *Elberton Southern R. Co. v. State Hwy. Dept.*, 211 Ga. 838 (89 SE2d 645); *Russell v. Venable*, 216 Ga. 137 (115 SE2d 103); and *Mitchell v. State Hwy. Dept.*, 216 Ga. 517, 519 (118 SE2d 88).

2. *Code Ann.* § 95-1504 provides that the State Highway Department is "To have charge and control of all road or highway work designated or provided for, or done by the State or upon the State-aid roads; to designate, improve, supervise, construct and maintain a system of State-aid roads; to have control, charge and supervision of the expenditures of all funds appropriated or provided for highway or road work by the State, or which may be a part of the State-aid road fund; to

provide for surveys, maps, specifications, and other things necessary in designating, supervising, locating, improving, constructing or maintaining said State-aid roads, or such other public roads as [are] provided for under Chapters 95-15 to 95-17 [of the Code]." By § 95-1704 "The disbursement of the State-aid road fund shall be made upon warrants drawn by the Governor upon bills of particulars and vouchers approved and submitted by the State Highway Department or its duly authorized representative." By *Code Ann.* § 95-1715 and *Code* § 95-1724 the State Highway Department is authorized to condemn property for road and allied purposes and in the latter section it is specifically empowered to act "for and in behalf of the State" in the exercise of its right of eminent domain in securing or acquiring necessary rights of way for use of the State's system of highways; and since it has such authority, a proceeding instituted by it for that purpose is necessarily an action brought and maintained by the State by and through the State Highway Department as its designated agent. See the majority holding of this court in *Elberton Southern R. Co. v. State Hwy. Dept.,* 211 Ga. 838, supra, and the cases there cited. Also *Russell v. Venable,* 216 Ga. 137, supra. And since the State's right of eminent domain is supreme and cannot be abridged (*Code Ann.* § 2-2501), we hold that the State Highway Department, in acting "for and in behalf of the State" and consequently as its designated agent for the purpose of securing necessary rights of way for the State's system of highways, can condemn property which a railway company owns and is using for a public purpose on first paying to such owner just and adequate compensation therefor. See *Elberton Southern R. Co. v. State Hwy. Dept.,* supra; and State of Ga. v. City of Chattanooga, 264 US 472 (44 SC 369, 68 LE 796). So when the State Highway Department condemns a right of way "for and in behalf of the State," the property thus acquired by it belongs to the State and becomes a part of its system of highways. But a rule different from the one stated above prevails where one is exercising a *delegated* power of eminent domain. There, the one exercising such a delegated power of eminent domain may not condemn property already devoted to another and different public use unless power to do so is conferred upon it in express terms or by necessary implication. *City Council of Augusta v.*

*Ga. R. & Bkg. Co.,* 98 Ga. 161 (1) (26 SE 499); and *Ga. Northern R. Co. v. City of Moultrie,* 163 Ga. 513 (1) (136 SE 415).

3. A court of equity will not interfere with the discretionary action of the State Highway Department in widening and improving a proposed State-aid highway within the sphere of its legally designated powers, unless such action is arbitrary and amounts to an abuse of discretion. *Crump v. State Hwy. Dept.,* 191 Ga. 130 (12 SE2d 310); and *Miller v. State Hwy. Dept.,* 200 Ga. 485 (3) (37 SE2d 365). Treating as true the averments and allegations of paragraph 4 of the defendant railway company's answer and objections and specifically those averred and alleged in sub-paragraphs (d) through (i) thereof, which we must do for purposes of the State Highway Department's demurrer and motion to strike, we hold that they aver and allege arbitrary, capricious, discriminating and unwarranted action on the part of the State Highway Department and show an unauthorized taking of the defendant railway company's property; action by it which is clearly beyond its power. Hence it was error for the trial judge to sustain the State Highway Department's demurrer and motion to strike the above-referred-to part of the defendant railway company's answer and objections.

4. While under Art. I, Sec. VIII, Par. III, of the Constitution of the United States (*Code* § 1-125), Congress has the exclusive power to regulate interstate commerce, and while the courts have held that a State can not impose undue burdens on interstate commerce, Sherlock v. Alling, 93 U.S. 99 (23 LE 819), Brown v. Houston, 114 U.S. 622 (5 SC 1091, 29 LE 257), a State however has an inherent and reserved right to regulate its local, domestic and internal commerce, even though by so doing it may indirectly or incidentally affect interstate commerce. Boston & M. R. v. Armburg, 285 U.S. 234 (52 SC 336, 76 LE 729). A state may exercise its power of eminent domain in acquiring necessary rights of way for State-aid roads although interstate commerce may be indirectly or incidentally involved. *Elberton Southern R. Co. v. State Hwy. Dept.,* 211 Ga. 838, supra; Chicago, R. I. & G. R. Co. v. Tarrant County Water Control & Improvement Dist. No. 1 (Tex. Civ. App.), 76 SW2d 147. But a state can not by an arbitrary, capricious and unnecessary exercise of its power of eminent

domain take and destroy property which a railway company is using for the purpose of carrying on an interstate commerce business. In this case the averments and allegations of paragraph 2 of the defendant railway company's answer and objections as amended when considered in connection with other averments and allegations of its answer and objections are sufficient to show that the State Highway Department, while acting for and in behalf of the State in this condemnation proceeding, is arbitrarily, capriciously and for an unnecessary purpose seeking to take and destroy property of the defendant railway company, namely, its depot in the City of Commerce which it uses for the purpose of conducting an interstate commerce business; and since they do, we hold that such action by the State Highway Department is an unauthorized interference with and an undue burden on the interstate commerce business which the defendant railway company conducts at its depot. Hence, the trial judge also erred in sustaining the State Highway Department's demurrer to and striking this portion of the defendant railway company's amended answer and objections.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Duckworth, C. J., who concurs in the judgment of reversal but dissents from the opinion of the majority and the judgment of affirmance.*

ARGUED SEPTEMBER 10, 1963—DECIDED NOVEMBER 8, 1963.

*Bloch, Hall, Groover & Hawkins, Fortson, Bentley & Griffin, Charles J. Bloch, Ellsworth Hall, Jr.,* for plaintiff in error.

*Eugene Cook, Attorney General, Carter Goode, E. J. Summerour, Assistant Attorneys General, John A. Darsey,* contra.

DUCKWORTH, Chief Justice. It is regrettable that I failed to state the grounds of my dissent in *Elberton Southern R. Co. v. State Hwy. Dept.,* 211 Ga. 838 (89 SE2d 645). The present case involves the same fundamental question, and this dissent is intended to apply here and there. Putting aside for the present any consideration of decisions on this question we consider only what is eminent domain. It is an element of sovereignty resting exclusively in the State, but which the State can delegate only by legislative acts. Whenever and wherever there is an exercise of

eminent domain, it is an exercise of sovereignty. The same sovereignty that the State uses to take private property is likewise used by all legal entities, such as the State Highway Department, after the State has delegated it to them. Therefore, it is a contest between absolute equals when an entity undertakes to employ this sovereign power to take from another entity that which it has acquired by this identical sovereign power. Of course, the State, the repository of this power, can, when expressly authorized by legislation, use this power to take property essential to the State from any owner even though it was acquired by the exercise of the power of eminent domain. When this railroad accepted its charter as a public utility it thereby assumed the duty to render service, and it can be compelled to do so. In preparation to discharge this public duty it secured by legislative action a delegation of the State's sovereign power to exercise the power of eminent domain to take private property for a public use. Thus the public policy of this State was established by the legislature, which alone can make public policy; and until the legislature changes this public policy no mere appointed head of a bureau has the right to claim to speak for the State and destroy that established policy. In the light of these hard facts, it is begging the question and ignoring the law to say that the Highway Department is the State, and its exercise of the power of eminent domain is an exercise of the same by the State, and hence superior to such power in this railroad. The State legislature invested the Highway Department with the power to take private property for a public use by eminent domain, *Code Ann.* § 95-1715 (Ga. L. 1939, p. 187; 1945, p. 258; 1953, p. 421) and *Code* § 95-1724, in the same degree and only to the extent that it did this railroad. Before it can take this property which is already devoted to a public use, it must have plainly expressed power to do precisely that. That it does not now have. I believe the following cases cited in the *Elberton Southern R. Co.* case, to wit: *City Council of Augusta v. Ga. R. & Bkg. Co.*, 98 Ga. 161 (26 SE 499) ; *County of Floyd v. Rome Street R. Co.*, 77 Ga. 614 (3 SE 3) ; *Louisville &c. R. Co. v. Postal Telegraph-Cable Co.*, 143 Ga. 331 (85 SE 110) ; *Lee County v. Mayor &c. of Smithville*, 154 Ga. 550 (115 SE 107) ; and *Ga. Northern R. Co. v. City of Moultrie*, 163 Ga.

513 (136 SE 415), all holding that one exercising the delegated power of eminent domain may not condemn property already devoted to a public use unless power to do so is expressly conferred, demanded there and demands here a ruling that the Highway Department, not having been given in express terms the powers to take railroad property which is devoted to a public use, is powerless to do so, and the lower court should have sustained the objection of the railroad and prevented the Highway Department from taking the property.

The present case vividly illustrates the danger and mischief in allowing a mere bureau to exercise such powers. Even a day laborer would know that to destroy the depot deprives the railroad of facilities essential to protection of life and property by giving orders, keeping up with the schedules of trains, avoiding collisions, as well as conveniences to its shippers and passengers. Only blindness to all the rights and duties of the railroad would dictate that this property be taken with such dire consequences, rather than other property a few yards away. This court in the *Elberton Southern R. Co.* case overlooked the vital fact that power of eminent domain resides in the State and can be delegated only by the legislature. And that in the act of delegating it there must appear in express terms the power to take property already dedicated to public use, else such property can not be taken under such delegated power. It also overlooked the indisputable fact that this and all powers of the Highway Department are delegated. To contend otherwise is to blindly ignore facts. The State had the power to embody in its legislative act delegating its sovereign power of eminent domain to the Highway Department a provision which in express terms authorized the use of this power to take property already dedicated to a public use, had it so chosen, but it did not do so, and the Highway Department now has no such power. I would point out with emphasis for the benefit of the legislature the danger in ever delegating such power to this or any other bureau as illustrated by the ruthless way this department now attempts to abuse the power it has. What was here undertaken contradicts the known will of the State as exemplified in chartering this railroad. It treats with contempt the vital rights and duties of this railroad.

It is a typical example of bureaucratic tyranny. In the *Elberton Southern R. Co.* case, although quoting the Constitution, Art. IV, Sec. II, Par. I (*Code Ann.* § 2-2501) which is: "The exercise of the right of eminent domain shall never be abridged, nor so construed as to prevent the General Assembly from taking property and franchises and subjecting them to public use," this court apparently failed to recognize that the Constitution thus quoted related solely and exclusively to the powers of the General Assembly. Of course that clause interdicts any limitation on the powers of the General Assembly. But this is unakin to powers of a mere bureau. It does emphasize the fact that only the General Assembly has constitutional power to speak for the State on this matter. The General Assembly both theoretically and actually speaks for the people. The Constitution, in this clause, identifies the only State agency that is protected in its power in this area, which is the General Assembly. One would have to be naive indeed to conclude that this clause was intended to confer tyrannical powers upon a mere head of a department of the State government to invade private property and ruthlessly take it from public service simply to satisfy the whims of an operator of a slide rule or drawer of a blueprint. People are not subject to such cold mathematical computation.

Their rights are sacred and should be protected as long as independent courts exist. The citation of *Tounsel v. State Hwy. Dept.*, 180 Ga. 112 (178 SE 285); *Irwin v. Crawford*, 210 Ga. 222 (78 SE2d 609); and *Ga. Power Co. v. Ga. Public Service Commission*, 211 Ga. 223 (85 SE2d 14), in the *Elberton Southern R. Co.* case as authority for holding that in exercising the power conferred upon it of eminent domain, the Highway Department is acting as the State, evidences a gross misconception of what those cases ruled as well as the capacity of the department in such matters. None of the cited cases are authority for a ruling that the Highway Department is the State in exercising this power. A reference to the legislative Acts which confer upon the Department the right to take property by an exercise of the power of eminent domain shows that they simply delegated that power to the department, and in its exercise, it acts for itself, restricted to the powers conferred. Of course it acts here, and in

all its activities, for the State, but until the State, through its legislature, invests it with power to take property devoted to public use, it has no such power.

Misunderstanding should not arise over the question of putting condemned property to a dual use. There, neither use is destroyed, illustrative of this being the overpassing or otherwise crossing a railroad. In such cases each user does so without destroying the use of the other.

For the foregoing reasons I concur in the judgment of reversal, but I dissent from the opinion of the majority and the judgment of affirmance.